# United States Court of Appeals for the Federal Circuit

### 2013-1621

MULTIMEDIA PATENT TRUST,

Plaintiff/Appellant,

v.

LG ELECTRONICS, INC.,
LG ELECTRONICS U.S.A., INC., and
LG ELECTRONICS MOBILECOMM U.S.A., INC.,

Defendants/Appellees

**Appeal from the United States District Court for the
Southern District of California in No. 12-CV-2731, United
States District Judge Honorable Marilyn L. Huff**

### BRIEF OF DEFENDANTS-APPELLEES

Michael J. McKeon
FISH & RICHARDSON P.C.
1425 K Street, NW, Suite 1100
Washington, DC 20005
(202) 783-5070

Justin M. Barnes
Lara S. Garner
FISH & RICHARDSON P.C.
12390 El Camino Real
San Diego, California 92130
(858) 678-5070

Frank P. Porcelli
FISH & RICHARDSON P.C.
One Marina Park Drive
Boston, MA 02210-1878
(617) 542-5070

Counsel for Defendants-Appellees LG
Electronics, Inc., LG Electronics
U.S.A., Inc. and LG Electronics
Mobilecomm U.S.A., Inc.

# CERTIFICATE OF INTEREST

Counsel for the LG Defendants certifies the following:

1.  The full name of every party represented by counsel is:

    LG Electronics, Inc., LG Electronics U.S.A., Inc., and LG Electronics Mobilecomm U.S.A., Inc.

2.  The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by counsel is:

    N/A

3.  All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

    LG Electronics Mobilecomm U.S.A., Inc. is a wholly owned subsidiary of LG Electronics U.S.A., Inc., organized under the laws of the State of Delaware, which is a wholly owned subsidiary of LG Electronics, Inc., a publicly owned company, organized under the laws of Republic of Korea. No publicly held company holds more than 10% of LG Electronics, Inc.'s stock.

4.  The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this Court are:

    Michael J. McKeon, Juanita R. Brooks, Justin M. Barnes, Richard A. Sterba, Lara S. Garner, Michael C. Tyler, Francis J. Albert, Kelly Hunsaker, all of Fish & Richardson P.C.

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTEREST ................................................................. i

TABLE OF AUTHORITIES ................................................................. iv

STATEMENT OF RELATED CASES ...................................................... vi

STATEMENT OF JURISDICTION .......................................................... vi

COUNTER-STATEMENT OF THE ISSUES ........................................... 1

COUNTER-STATEMENT OF THE CASE ............................................... 1

COUNTER-STATEMENT OF THE FACTS ............................................ 5

I.    MPT Continually Failed To Satisfy The Patent Local Rules
      Regarding Timely Disclosure of Infringement Contentions In
      The First Action ........................................................................... 6

II.   The District Court Granted-in-Part LG's Motion To Strike MPT's
      Third Set Of Infringement Contentions, Eliminating MPT's
      Claims Against Non-MSM6575 Products In The First Action ....... 8

III.  To Resurrect Its Stricken Claims, MPT Filed A Motion For
      Reconsideration Arguing Undue Prejudice If Not Allowed To
      Contend That The MSM6575 Was Representative ....................... 11

      A.    MPT's Opening Motion and Supporting Declaration
            from Its Counsel ............................................................. 11

      B.    MPT's Reply Brief and Supporting Expert Declaration ..... 14

IV.   The District Court Allowed MPT To Resurrect Its Contentions
      Against The Non-MSM6575 Products As Part Of A Severed,
      Second Action To Remedy The Specific Prejudice Of Not Being
      Able To Prove Representativeness ............................................. 15

V.    MPT Understood That The First Action's Trial Would Serve As
      A Representative Case And That LG Would Be Filing Dispositive
      Motions In The Second Action If LG Prevailed In The First Action .......... 17

## TABLE OF CONTENTS - CONTINUED

VI.   After LG Prevailed At Trial On The MSM6575 Products, MPT Refused To Be Bound By Its Prior Representations, So LG Filed For Rule 50 And Rule 59 Relief In The First Action, And Filed For Summary Judgment In The Second Action .................................................. 19

SUMMARY OF THE ARGUMENT ................................................ 26

STANDARD OF REVIEW ................................................ 29

ARGUMENT ................................................ 30

I.   The District Court Was Well Within Its Discretion To Prevent MPT From Reversing The Prior Representations That The MSM6575 Is Representative Of The Other Qualcomm Chips .................... 30

   A.   There Is No Question That MPT Has Taken Inconsistent Positions Regarding Whether The MSM6575 Is Representative For Purposes Of Infringement ........................... 32

   B.   The Court Explicitly Held That It Relied On MPT's Prior Representation That MPT Would Be Prejudiced If Unable To Prove That The MSM6575 Was Representative ........................... 34

   C.   LG Would Have Been Prejudiced, And MPT Would Have Unfairly Benefited, Had MPT Been Permitted To Reverse Its Position ................................................ 38

   D.   MPT Distorts The Record ................................................ 40

      1.   Contrary to MPT's Assertions, the Timing of the District Court's Rulings Is Irrelevant ........................... 41

      2.   MPT's Allegation That It Was Prejudiced By Insufficient Time To Gauge "Representativeness" In The First Action Is Belied By The Facts ........................... 43

II.   The Court Was Well Within Its Discretion To Prevent MPT From Resurrecting The MPEG-4 Part 2 Contentions That MPT Deliberately Dropped During The Representative Trial In The First Action .................... 46

III.   MPT Was Not "Denied A Review" Of Its Claims ........................... 50

CONCLUSION ................................................ 51

# TABLE OF AUTHORITIES

**Page**

*Acumed LLC v Stryker Corp.*,
    551 F.3d 1323, 1331 (Fed. Cir. 2008) ..................................................30

*Cross Medical Products, Inc. v. Medtronic Sofamor Danek, Inc.*,
    480 F.3d 1335, 1345 (Fed. Cir. 2007) .............................................46

*Hamilton v. State Farm Fire & Cas. Co.*,
    270 F.3d 778, 782 (9th Cir. 2001) ...............................................29, 35

*Kearns v. General Motors Corp.*,
    94 F.3d 1553, 1555 (Fed. Cir. 1996) ...........................................39, 49

*Kim v. Sara Lee Bakery Group, Inc.*,
    412 F.Supp.2d 929, n.8 (N.D. Ill. 2006) ......................................39, 49

*Miller v. County of Santa Cruz*,
    39 F.3d 1030, 1032 (9th Cir. 1994) ................................................30

*Monolithic Power Systems, Inc. v. O2 Micro Int'l Ltd.*,
    476 F. Supp. 2d 1143, 1156-57 (N.D. Cal. 2007) .......................39, 49

*Multimedia Patent Trust v. LG Electronics, Inc.*
    No. 10-cv-2618-H-KSC (S.D. Cal.), *appeal pending*, No. 2013-1620
    (Fed. Cir.) ....................................................................................vi

*New Hampshire v. Maine*,
    532 U.S. 742, 750 (2001) ...................................................30, 31, 35

*Polymer Industrial Products Co. v. Bridgestone/Firestone, Inc.*,
    347 F.3d 935, 938 (Fed. Cir. 2003) ...............................................49

*S. Cal. Edison Co. v. Lynch*,
    307 F.3d 794, 807 (9th Cir. 2002) .................................................47

*Single Chip Systems Corp. v. Intermec IP Corp.*,
    495 F.Supp.2d 1052, 1059 (S.D.Cal. 2007) ..................................49

*Smith v. Jackson*,
    84 F.3d 1213, 1221 (9th Cir.1996) ...............................................29

**TABLE OF AUTHORITIES - CONTINUED**

*SmithKline Beecham Corp. v. Apotex Corp.*,
    439 F.3d 1312, 1319 (Fed. Cir. 2006) ..............................................................45

## STATEMENT OF RELATED CASES

Pursuant to Federal Circuit Rule 47.5, Defendants-Appellees state that the instant case is related to *Multimedia Patent Trust v. LG Electronics, Inc.* No. 10-cv-2618-H-KSC (S.D. Cal.), *appeal pending*, No. 2013-1620 (Fed. Cir.). The instant case is the continuation of that matter, specifically as to the representativeness of a certain product with respect to certain other products stricken in the earlier action. By order of this Court, the cases will proceed as companion cases before the same merits panel. D44. In its opening brief, MPT did not contend under Federal Circuit Rule 47.5(b) that any of the issues in the 1620 appeal will or should directly affect the issues in Case No. 2013-1621. Defendant-Appellees agree.

## STATEMENT OF JURISDICTION

LG agrees with MPT's jurisdictional statement.

## COUNTER-STATEMENT OF THE ISSUES

1.       Whether the district court abused its discretion in terminating MPT's second litigation against LG in light of MPT's assertion of a position in the second litigation completely contrary to a position MPT asserted in a first litigation that was central to the court's extraordinary relief in allowing MPT's second litigation against LG in the first instance.  More specifically, did the district court err in protecting the integrity of the judicial process by stopping MPT's second litigation where MPT previously asserted that the MSM6575 chip was representative for the purposes of infringement; proceeded to a jury trial on the MSM6575 chip as representative; then, after an adverse jury verdict in the first litigation, reversed course in the second litigation and claimed the MSM6575 was not representative based on the same underlying evidence?

2.       Whether the district court abused its discretion in also applying its estoppel ruling, as well as its case management orders, to preclude MPT from resurrecting its abandoned MPEG-4 Part 2 infringement theory in the second litigation after the jury returned a verdict finding that the representative MSM6575 chip did not infringe MPT's patents?

## COUNTER-STATEMENT OF THE CASE

In a first litigation – Case No. 10-cv-2618 (S.D. Cal. 2010) ("First Action") – MPT failed on three separate instances over almost two years to provide

infringement contentions that complied with the Patent Local Rules. After the first two deadlines passed with MPT providing no claim charts, given a third chance it did provide detailed claim charts, but took a short-cut by presenting charts relating only to the accused functionality as implemented in a single Qualcomm chip contained in LG's mobile phones – the Qualcomm MSM6575 chip. For the LG phones using non-MSM6575 Qualcomm chips, MPT conclusorily stated they worked the same *for purposes of infringement*. LG moved to strike MPT's contentions and, after weighing the prejudice to LG caused by MPT's repeated failures to comply with the procedural schedule, the Court struck (10 weeks before trial in the First Action) MPT's contentions for the non-MSM6575 Qualcomm chips. A7.

That should have ended the matter. But MPT then requested a fourth chance, moving for reconsideration and pleading that permanently striking the vast majority of accused products would be unduly prejudicial since those products worked just like the MSM6575 *for purposes of infringement* and constituted 95% of the accused LG products with Qualcomm chips. A7-8, A3336. This time, MPT included a sworn declaration from its expert (who had conducted "countless hours" of review), as well as a sworn declaration from its lead counsel, to support MPT's claim the MSM6575 was representative of the non-MSM6575 chips *for the purposes of infringement*. A2138-42, A3322-28.

2

Based on MPT's representations, the district court gave MPT yet another chance, reviving the stricken claims and allowing MPT to file a new, second lawsuit against LG ("Second Action"). The court expressly relied on MPT's claims of prejudice in not being able to make a representative infringement claim; that is, not being able to demonstrate that the Qualcomm MSM6575 chip was in fact representative for purposes of infringement of the other Qualcomm chips. A2037 n.4. LG now faced a first infringement trial directed to the infringement allegations against the Qualcomm MSM6575 chips and a second litigation directed to the infringement allegations of the other products purported by MPT to be represented by the MSM6575 chips. The trial in the first action concluded with the jury returning a verdict in favor of LG finding no infringement of any patent claim by the Qualcomm MSM6575 chip. That should have finally disposed of MPT's claims in the Second Action against the other 18 chips MPT had contended were represented by the MSM6575.

But after the verdict, MPT sang a different tune. In the Second Action, without any explanation, MPT dropped its claim that the MSM6575 chip was representative of the others and instead turned to a different expert who took a directly contrary position based on the same underlying evidence. The district court rightly put a stop to that. After reviewing the lengthy procedural history and the various representations made by MPT, the district court recognized that MPT

3

was attempting to secure an "unfair advantage" through its course of conduct:

> MPT seeks to gain an ***unfair advantage*** based on the Court's decision to sever the products into a new action rather than to strike them with prejudice. MPT ***should not benefit from its failure to provide proper infringement contentions with adequate claim charts in the first action***–a failure that is more egregious if MPT's current position that there are material differences between the chips is correct. A16-17 (emphasis added).

MPT, to this day, has never explained what its original expert, Dr. Richardson, theoretically got wrong when he swore under oath after "countless hours" of code review that the MSM6575 was representative *for the purposes of infringement*.

Thus, when MPT attempted to gain an unfair advantage from the Court's leniency, and used the severed proceeding to advance the exact opposite conclusion from what MPT had represented to the Court as the foundation of getting its fourth chance – based on the exact same underlying evidence, no less – the district court properly held MPT to its original representations. The Court was well within its discretion to find judicial estoppel on the issue of representativeness and therefore correct as a matter of law in entering summary judgment against MPT based on the resulting preclusion.

4

## COUNTER-STATEMENT OF THE FACTS

The short story is that this severed action is a direct result of MPT's continual failure to provide proper contentions in the First Action,[1] and the fallout from that failure. MPT was given three opportunities over the course of two years to provide LG with infringement contentions that complied with the Court's Local Patent Rules – MPT failed three times. A3-7. Such contentions are especially important in this case, where LG is accused of infringement for the use of Qualcomm chips that LG did not design or manufacture. A9. In each of these instances, MPT was afforded a deadline significantly later than what the Patent Local Rules provide. A5 n.5. After the third set of deficient contentions, the district court granted-in-part LG's motion to strike, eliminating MPT's contentions against all non-MSM6575 products. A6-7. Thereafter, MPT succeeded in resurrecting its claims against those products by urging through multiple sworn declarations that it would be severely prejudiced if not allowed to pursue its claim that the MSM6575 was indeed representative for the purposes of infringement. After using those declarations as the foundation for this Second Action, when the jury then rejected infringement against the MSM6575 in the First Action, MPT turned to a different expert to advance the exact opposite conclusion. MPT's

---

[1] The First Action is co-pending on appeal as Case No. 2013-1620, which the Court has ordered to proceed as a companion case before the same merits panel. D. 44 at 1.

5

second expert opined that the MSM6575 *was **not*** representative *for the purposes of infringement* – based on the same underlying evidence that MPT's first expert previously relied on in concluding the MSM6575 ***was*** representative *for the purposes of infringement*. The district court found MPT's conduct an attempt "to gain an unfair advantage," and that "MPT should not benefit from its failure to provide proper infringement contentions." A16-17.

The long story is significantly more involved, but important to determining whether the district court – after living through all of the various contentions, reports, declarations, motions, and hearings – was within its discretion in finding judicial estoppel and therefore correct as a matter of law in granting LG's motion for summary judgment based on the resultant claim and issue preclusion.

## I.    MPT Continually Failed To Satisfy The Patent Local Rules Regarding Timely Disclosure of Infringement Contentions In The First Action

MPT filed the First Action on December 20, 2010, alleging infringement of U.S. Patent No. 5,227,878 ("'878 patent") and U.S. Patent No. 5,136,377 ("'377 patent"). A3. MPT accused LG cell phones compliant with either H.264 and/or MPEG-4 Part 2 video standards. A3009. Rather than hold MPT to the usual 60 days to serve infringement contentions, the district court initially afforded MPT nearly a year, until December 8, 2011. A3. Those contentions were admittedly insufficiently detailed, but the district court nonetheless allowed MPT another five

months, until May 1, 2012, to serve another set. A3. That second set of contentions were similarly deficient. A3-4.

At a May 30, 2012 hearing on LG's motion to strike the May 1, 2012 contentions, the court admonished MPT for having not provided sufficient contentions in the 18 months the case had been pending, and warned that the court's leniency was coming to an end. A3105 ("the magistrate judge before has given MPT, the Plaintiff, considerable leeway in trying to get discovery"), A3113, A3120-21 ("The scheduling order first said December 8, 2011. And then as you've said, the magistrate continued that to May 1, 2012, recognizing that there are - you've got some third-party discovery and issues. So now they should have been identified May 1. I agree with you on that."), A3131, A3136 ("But we will - you will know - and you've got experts going, so you will know - and there will be a time where we say, that's it."), A3108 ("There are consequences down the road if there's improper allegations."). The Court denied LG's motion to strike MPT's May 2012 contentions without prejudice, but warned MPT that it would need to demonstrate good cause and diligence if it wanted to amend its contentions at a later time. A4-5.

MPT's September 4, 2012 third set of contentions were a wholesale shift in its allegations. New to the contentions – ten weeks before trial – were (1) infringement claim charts for the '878 patent and (2) detailed analysis of accused

7

structure for the '377 patent's mean-plus-function claims. A3198. And the

contentions contained a claim chart for only one of nineteen Qualcomm chips

incorporated into LG's accused cell phones.[2] A7. For the other eighteen, MPT

contented, without any detail, that each was represented by the MSM6575 for

purposes of infringement. A7, A3184 ("Based on MPT's review of the Qualcomm

and LGE source code for the accused cell phones in Group LG-1, it appears that

the analysis for the MSM6575 Qualcomm chip – both for H.263/MPEG-4 and for

H.264 – is representative of the infringing functionality and structure of the Group

LG-1 products.").[3] MPT's expert's report, submitted two and a half weeks later,

echoed the infringement contentions. A3230.

## II. The District Court Granted-in-Part LG's Motion To Strike MPT's Third Set Of Infringement Contentions, Eliminating MPT's Claims Against Non-MSM6575 Products In The First Action

LG moved to strike MPT's new contentions in their entirety – *against all LG*

*products* – for lack of diligence and good cause, and also for subjecting LG to

substantial prejudice. Regarding lack of diligence and good cause, LG noted that

MPT had continually delayed obtaining discovery from Qualcomm, and LG also

provided a declaration from Qualcomm's counsel outlining the chain of events that

[2] In addition to the various LG phones utilizing Qualcomm chips, other LG phone utilizing video functionality provided by vendors other than Qualcomm were also accused – those phones and those vendors are not pertinent to the present appeal.
[3] S.D. Cal. Patent Local Rule 3.1(c) required infringement contentions to include "A chart identifying specifically where each element of each asserted claim is found within each Accused Instrumentality"

8

confirmed that conclusion. A3203-04, A3247-48, A3254-56. Despite MPT

admittedly knowing the importance and complexity of third party discovery and

knowing Qualcomm was LG's largest supplier, MPT waited months to even

subpoena Qualcomm, MPT consistently waited weeks if not months to review

code Qualcomm made available, and MPT never moved to compel any discovery

despite the Magistrate Judge noting that MPT should promptly raise any

Qualcomm-related issues. A3022, A3068, A3242, A3247.

In addition to lack of diligence and good cause, LG explained the significant

prejudice caused by MPT's substantial delays. MPT took 20 months to disclose its

infringement contentions, yet LG was left with only 38 days to review, analyze,

and fully respond to the contentions before LG's responsive expert reports were

due concerning products LG did not design or manufacture; making matters worse,

all these late disclosures were less than three months before trial. A3204.

LG argued that if the court was inclined to allow MPT to amend its

contentions, at the very least the contentions for the products utilizing the non-

MSM6575 chips should be stricken given the lack of claim charts supporting those

contentions. A3300. In response, MPT argued there was no reason to distinguish

the non-MSM6575 products, because all products worked the same *for the

purposes of infringement*, its analysis was "cut and paste," and that MPT's expert

was prepared to make a presentation to the jury on that basis. A3301-02.

9

The court found the specific facts fell into a "gray area" for purposes of diligence and prejudice. A3287, A3304 ("So I think it's fair that if it's in the infringement contentions identifying that chip and identifying how it infringes, it is [MPT's] burden. And I think it's a fair point because I'll say as to L.G. -- as I mentioned before, we're in this gray area. It's 48 days. Is that diligent, not diligent as to what was done, what was not done. And then they have a broader view as to when Qualcomm first got involved in the matter.").

The court noted that it would be within its discretion to strike ***all MPT's contentions***, but believed the fairest result would be to allow the MSM6575 contentions and strike the contentions for the other Qualcomm chips. A3305. Accordingly, on September 28, 2012, the court granted LG's motion in-part finding that MPT's contentions against the non-MSM6575 products "provided LG with insufficient notice and did not comply with the Patent Local Rules"…"because the MSM6575 chip was the only Qualcomm accused instrumentality disclosed in MPT's final infringement contentions with claim charts in compliance with Patent Local Rule 3.1(c)." A8, A18. After hearing that the motion would be granted-in-part, MPT proposed that trial against LG be delayed so that MPT could rectify the situation, but the court denied that request. A7, A3306-09. Further, the Court's order granting-in-part LG's motion to strike did not provide any allowance to pursue the stricken claims in the future. A7.

10

III.  **To Resurrect Its Stricken Claims, MPT Filed A Motion For Reconsideration Arguing Undue Prejudice If Not Allowed To Contend That The MSM6575 Was Representative**

   A.  **MPT's Opening Motion and Supporting Declaration from Its Counsel**

Both LG and MPT concluded that the products had been stricken permanently.  A3339 ("the unintended consequence of the Court's current ruling would be to eliminate MPT's ability to present its infringement case for over 90% of the accused Qualcomm-based LG phones."); A3435 ("what is probably going to happen is your Honor is going to grant a summary judgment of non-infringement of 95 percent of the chips.").[4]  Accordingly MPT filed a motion for reconsideration in the hope of resurrecting its infringement claims.  A7, A3334-43.  MPT's argument hinged on the proposition that it would be unduly prejudicial to MPT to strike the contentions against the non-MSM6575 chips – because the MSM6575 was representative, and if the MSM6575 was found to infringe, LG should not win by default on the remaining 95% of chips that had the same functions and structures:

> While the Court's intent may have been to address LG's unsupported claims of prejudice, the result of the Court's granting of LG's last minute request was to unfairly and disproportionally ***prejudice***

---

[4] The stricken non-MSM6575 chips were roughly 95% of the accused Qualcomm chips, and 85% of the accused chips overall (as some accused products utilized video codecs supplied by companies other than Qualcomm).  Accordingly, some citations and references in the record refer to 85% while others refer to 95%.

> ***Plaintiff, since it would bar MPT from proving what it stated in its final infringement contentions***:
>
>> the analysis for the MSM6575 Qualcomm chip—both for H.263/MPEG-4 and for H.264—is representative of the infringing functionality and structure of the Group LG-1 products. As such, the correspondence between the asserted claims and the functionality and structure described in this source code is set forth in Exhibits A-D.
>>
>> . . .
>>
>> Because the Qualcomm MSM6575 chip is used in perhaps as few as 2.2 million of the 38 million accused Qualcomm-based LG phones, the Court's order may have ***the unintended effect of barring MPT from using the source code produced for the MSM6575 chip as an exemplar as to how the source code for all of the accused phones infringe***, as stated in its final infringement contentions and as explained in its expert report.[ ] To correct this inequity, MPT asks the Court to extend its finding of diligence and good cause to apply to the Qualcomm hardware code that was first made available in August 2012.

A3336 (emphasis added); A7-8 n.7.  In support of its position, MPT offered the sworn declaration of its lead counsel.  A3322-28, A2138-42.

Notably, MPT's reconsideration motion was not premised on any argument that Qualcomm had prevented MPT from meaningfully reviewing the Qualcomm code.  Indeed, to the contrary, MPT was adamant that it had what it needed from Qualcomm, was certain of its position, and the Qualcomm production delay simply had prevented MPT from articulating the details of its position that the MSM6575 was representative.  A3335 ("***Based on my review*** of the Qualcomm and LG source code for the accused cell phones in Group LG-1, ***I have determined*** that my

12

analysis of the source code for the MSM6575 Qualcomm chip—both for the

H.263/MPEG-4 codec and for the H.264 codec—is representative of the infringing

functionality and structure of all of the Group LG-1 products.") (emphasis added);

A3339 (Other LG products "use a modified version of the MSM6575 chips that,

for the purposes of MPT's infringement analysis, have the same or substantially

similar structure and operation").

Put another way, MPT's prejudice was limited to being barred from making

a "representative claim" – nothing more.  Indeed, had MPT argued that it had run

out of time and did not know how the other LG products functioned, the district

court indicated it would have dismissed those products from the case *with*

prejudice.  A15-16, A1068-69.

LG opposed MPT's motion on the basis that LG should not have to bear the

burden – one month prior to trial – of either (1) blindly accepting MPT's

conclusory representations, or (2) having to perform its own analysis regarding

whether the MSM6575 was indeed representative: "to be sure, parsing the source

code of nineteen different chips to determine how they differ is a laborious

undertaking, and even more so since MPT has provided no detailed analysis to use

as a starting point for any such undertaking."  A3397.

## B.    MPT's Reply Brief and Supporting Expert Declaration

In response to LG's argument that MPT had not presented the basis for its conclusion that the MSM6575 was representative, with its reply briefing, MPT offered a second declaration, this time from its expert Dr. Richardson. MPT's various submissions left no doubt of MPT's firm conviction that (1) it had already finished its analysis and (2) that analysis showed that the MSM6575 was representative of the other Qualcomm chips *for the purposes of infringement*:

- "In Dr. Richardson's expert opinion, it is the structure and operation of the MPEG-4/H.263 and H.264 codecs within LG's Qualcomm-based phones that causes those phones to infringe the '377 and '878 patents, not anything particular having to do with the MSM6575 chip." A3407.

- "I have spent a total of seven full days reviewing the Qualcomm source code, securely located at the Iron Mountain facility housing the Qualcomm code, and countless hours further reviewing by hand hard-copy printouts of portions of the code made by me and others." A2139.

- "Comparing the source code for these two QDSP versions, I have been able to find each of the structures I charted for QDSP-4 used in the MSM6575, for both of the video codecs, in the source code for the QDSP-5, supporting my conclusion that the MPEG-4/H.263 and/or H.264 codecs within the MSM6575 chipset is representative for purposes of my infringement analysis in this case." A2141.

- "Based on my review, these various files appear to be identical in nearly all relevant respects, with the majority of differences appearing to be minor revisions unrelated to my infringement analysis for LG's Qualcomm-based phones." A2141-42.

14

The district court afforded LG a sur-reply, since the evidence provided in MPT's reply brief was "the first time MPT attempt[ed] to provide the Court with a detailed explanation of why it thinks it was proper for it to use the MSM6575 chip as a representative product in its final infringement contentions." A3416. The focus of LG's sur-reply was the fact that MPT's evidence was an improper grounds for granting a reconsideration motion. A3421-22. LG also stressed that even if MPT and Dr. Richardson were firm in their conviction that the MSM6575 was representative, insufficient evidence to support that conviction had been provided to LG, and thus MPT still had not satisfied its burden under the Patent Local Rules. A3427 ("Since Dr. Richardson has not claim charted or compared and contrasted the code from the other chips for all the claim elements – simply making an over-arching conclusory statement that the MSM6575 is representative – it is unknown what other source code-specific defenses might exist for the other Qualcomm chips.").

## IV.    The District Court Allowed MPT To Resurrect Its Contentions Against The Non-MSM6575 Products As Part Of A Severed, Second Action To Remedy The Specific Prejudice Of Not Being Able To Prove Representativeness

At the motion for reconsideration hearing, now six weeks after MPT's final infringement contentions, MPT again confirmed that it had completed its infringement analysis and was certain the MSM6575 was representative, and accordingly that it should not be prejudiced by losing 95% of its case for products

15

that undoubtedly worked the same as those about to go to trial. A3433-37; see also A3455 ("We've got the same infringing source code in each of the chips regardless of additional source code."). LG noted the severe prejudice from the lack of sufficient detail. A3437-41. The district court agreed, noting that the Patent Local Rules exist to prevent the type of "chaos" that comes from such conclusory contentions. A3444-45, A3447 ("the real issue is not necessarily one of diligence. It's one of notice and prejudice to the other side."). MPT once again raised the specter of a separate LG-only trial in 2013, but LG objected due to the increased costs to LG, and the court once again declined MPT's suggestion. A8, A3453-56, A3458-59.

Although the court "denied" MPT's motion for reconsideration, finding that LG should not be prejudiced due to MPT's insufficient eleventh hour contentions (A2036 ("it is improper for MPT to state that these chips work similarly without providing LG with the source code that MPT relies on as the basis for that assumption.")), it held that MPT could pursue a new suit (what became the Second Action) to remedy the prejudice that MPT had identified. A2037 n.4. Critically, the only potential prejudice the court cited was the specific prejudice that MPT had identified in its motion for reconsideration: the prejudice in not being able to make the representative claim in its contentions. A2037 n.4 (citing to Doc. No. 364 at 3 [A3336]); A3336 (arguing that the court's granting of the motion to strike would

16

"prejudice Plaintiff, since it would bar MPT from proving what it stated in its final infringement contentions"). The district court did not hold that MPT was entitled to the Second Action because it was prejudiced due a lack of sufficient time in the First Action; quite the opposite, the district court specifically found that MPT was *not* prejudiced by the deadlines in the First Action, and that MPT had put itself into its predicament. A2035; *see also* A2034-35 ("If MPT wanted to rely on representative claim charts, it should have provided a detailed explanation in its final infringement contentions or in a motion for leave to amend its contentions….Instead, MPT waited until its reply to provide an explanation.").

## V. MPT Understood That The First Action's Trial Would Serve As A Representative Case And That LG Would Be Filing Dispositive Motions In The Second Action If LG Prevailed In The First Action

In the First Action, LG moved for summary judgment on the products for which contentions had been stricken, arguing that in other MPT litigations the court had granted similar motions on estoppel grounds based on a failure to prosecute. A3364-67, A3349-50. At the November 9, 2012 summary judgment hearing, the district court denied LG's motion, noting that the court had provided MPT the opportunity to file the Second Action, and thus disposition of those products was "an issue for another day." A2058, A2065-66.

In so ruling, the court expressly noted that preclusion would likely apply should LG succeed at trial in the First Action. A9. Indeed, the understanding

17

among the parties and the court was that the impending trial involving the

MSM6575 would serve as a "representative case" for the products severed into the

Second Action and that judicial estoppel and issue preclusion would likely apply:

- A2059 ("[THE COURT:] And now they filed the suit yesterday. And I'm sure you're not pleased to have the suit filed yesterday. But if – if these are really representative claims…then it will be decided one way or the other.");
- A2063 ("[THE COURT:] So what if it -- that's just what I said. What if instead the answer is just let's sever? Sever the DJ, sever that as to those chips. You have illustrative ones that one side says are the same -- similar. Find out what happens there. And then the next one may stand or fall");
- A2086 ("[THE COURT:] On the flip side, if what the Court was saying on the briefing is that we're proceeding awfully fast. The one that has is the one chip. We can proceed on that. There's no prejudice because, depending on whatever the finding is -- *if there's a finding of no infringement, I doubt that they'd proceed with the rest of it if they – there's judicial estoppel as well* [ ].") (emphasis added);
- A2067 ("[THE COURT:] And then you've got a really good idea as to what they've said a representative product as to whether it infringes or doesn't infringe.");
- A2069 ("MR LORIG: Your Honor, *I think it would be issue preclusion in any event*. Of course we'd stipulate that we would – we've got L.G. on one side, MPT on the other. *If we win or lose on key legal issues, it's going to bind us*.") (emphasis added);
- A2090-91 ("[MR. LORIG:] Of course, your Honor. And that severed claim could be tried with a second case. But – [THE COURT:] And maybe we don't need to because we'll have this – [MR. LORIG:] Exactly. [THE COURT:] -- one that will give -- instead of -- we'll have one that you identified as your best case. And then hopefully, that stands or falls based on what happens in that one. [MR. LORIG:] Yes. The representative case. I agree, your Honor.").

Moreover, the Court understood that further briefing on the propriety of the

Second Action would be forthcoming, since LG contended that in light of LG's

18

Declaratory Judgment claims in the First Action, MPT should not have been afforded the opportunity to pursue the Second Action, and at the very least *res judicata* would apply. A2060-60.5, A2085, A2088-89, A2094 ("And then since the Court raised the issue of severance, which is within the Court's discretion, I would also permit the parties to brief that at an appropriate time."); A9 (in reference to page 120 of the November 9, 2012 transcript, "The Court also stated that it would reserve ruling on the *res judicata* effect of the first trial on the severed action.").

## VI. After LG Prevailed At Trial On The MSM6575 Products, MPT Refused To Be Bound By Its Prior Representations, So LG Filed For Rule 50 And Rule 59 Relief In The First Action, And Filed For Summary Judgment In The Second Action

In the representative case involving the MSM6575 products, LG won at trial, with the jury returning a verdict of non-infringement on all of MPT's asserted claims against the MSM6575. A10, A3800. The verdict form did not specifically call out whether any particular functionality infringed, but instead whether the product generally infringed. A3800. MPT's pre-trial filings, however, confirmed that MPT was alleging both H.264 and MPEG-4 Part 2 functionality infringed. A3534-37.[5] For presumably strategic reasons related to jury presentation, MPT

---

[5] Local Rule 16.1(f)(2) requires each party to disclose the contentions upon which it "intends to rely at trial."

presented evidence relating only to H.264 functionality and offered no testimony regarding MPEG-4 Part 2 functionality. A28-29.

The first hearing after the jury verdict was a February 6, 2013 status conference. Based on MPT's prior contentions that the MSM6575 was representative, LG expected that MPT would either agree to a stay and/or agree to treat the products in the Second Action as represented by the MSM6575, so that all products could be consolidated for appeal in the First Action. While MPT was amenable to a stay, the district court declined to stay the case. A1003. At that point, LG proposed stipulating to the MSM6575 being representative – i.e., agreeing to the factual finding that MPT had been seeking all along – so that everything could be appealed together; but in response MPT for the first time suggested that it had shifted its position and would abandon its contention that the MSM6575 was representative *for the purposes of infringement*. A1016, A1021. During the hearing, LG requested permission to brief the issues of whether the non-MSM6575 products should be included in the First Action's judgment and whether estoppel applied in the Second Action. The district court was amenable to both. A1012-15. Shortly thereafter, LG moved the court pursuant to Rule 50(b) and 59(e) to hold MPT to its prior representations of representativeness and to include the non-MSM6575 products in the First Action's judgment.

At a March 29, 2013 status conference in the Second Action, the court set a schedule for summary judgment motions.  In the time between the February 6 and March 29 conferences, MPT had proceeded in the Second Action as though it was a completely new action – unconnected with the First Action – serving new discovery on Qualcomm and seeking an extended case schedule.  The district court would have none of it.  A1036 ("this isn't a brand new case in the sense that we should start from the beginning and then have full-blown discovery of everything. I'm not seeing it that way.").  LG agreed that it should not be spending resources defending against MPT's claims after MPT represented that the MSM6575 was representative, agreed to the First Action as a representative case, and then lost that representative case.  A1038-39.

The district court, having now seen LG's 59(e) motion from the First Action, set an expedited schedule for contentions and a summary judgment motion on collateral estoppel, setting the 59(e) motion to be heard contemporaneously with the collateral estoppel issue.  A1042, A1044-46, A1050 ("But then it does leave the Court either on the 59(e) motion or on a separate motion for collateral estoppel to then make a decision about whether these are the same type of issues that we already did in the first trial or whether they're dramatically different.").  After setting the summary judgment briefing schedule, the Court entered a separate order requiring the parties to address certain technical issues in their briefing.  A2121.

LG moved for summary judgment of claim preclusion and issue preclusion, both because of judicial estoppel and also because (as a technical matter) the non-MSM6575 products were not materially different from the MSM6575 on the undisputed facts. A3810-11. Regarding judicial estoppel, LG reminded the district court of MPT's continuous representations in the First Action that the MSM6575 was representative. A3822-24. LG pointed out that MPT had never indicated what – if anything – was supposedly incorrect about Dr. Richardson's categorical conclusion in his sworn declaration that the MSM6575 was representative *for the purposes of infringement*. A3824-26. Instead, after reviewing the very same evidence Dr. Richardson had considered, MPT's new expert Dr. Maya Bystrom simply reached the opposite conclusion, without any explanation that would reconcile the contradictory conclusions.[6] A3826. Separately, LG argued that after MPT (finally) disclosed which portions of the code allegedly infringed, LG's experts had opined that the MSM6575 was representative for the purposes of the infringement issue and that none of the accused products were materially different from the MSM6575. A3814-22.

---

[6] Dr. Bystrom's report included allegations against LG's MPEG-4 Part 2 technology and included opinions regarding the doctrine of equivalents; since neither of those items were pursued through trial in the First Action, LG moved to strike and/or preclude MPT from resurrecting those issues in the Second Action, and the Court granted LG's motion to preclude. A26-29.

MPT took the position that it was LG, not MPT, that should be estopped, as MPT had not "won" anything based on its prior representations about the MSM6575. A2246-51. MPT also relied on Dr. Bystrom's conclusion that there were material differences between the products, and attached a new declaration from Dr. Bystrom in this regard. A2267-97. In reply, LG noted MPT's failure to offer any explanation for its stark 180 degree change in position regarding the MSM6575 being representative *for the purposes of infringement*, MPT's failure to comply with the district court's order specifically requiring the parties to address certain technical similarities between the two sets of products as part of the summary judgment briefing, and that MPT had certainly "won" something by its prior representations – it had received the ability to resurrect its stricken claims from being permanently barred (and thus the possibility of obtaining damages on 85% of the accused products) in the First Action. A3839-41. LG further argued that MPT's new expert's "conclusions" were conclusory and not based on the correct legal standard for "material differences." A3842-45.

The July 17, 2013 hearing focused on these same issues. LG pointed out that all of the supposed material "differences" MPT's new expert Dr. Bystrom had identified were the exact same differences Dr. Richardson had identified – yet discounted as being ***immaterial*** – when he did his analysis in late 2012, and that there was no explanation of what Dr. Richardson theoretically got wrong in his

analysis. A1062-64, A1119-20. LG also noted that, if MPT had stated in 2012 that the non-MSM6575 products were not representative – and simply had failed to include any claim charts for those products – the district court would not have allowed the Second Action for those products, a point for which the district court explicitly agreed:

> [MR. BARNES:] I have to think if that [i.e., had no contentions whatsoever been provided] were the case, there wouldn't have been any second case allowed, and those products would have been stricken, like the Emuzed and the various other third-party chips that MPT just failed to pursue. So that's why we believe that there was reliance by the Court.
> …
> THE COURT: ***I do agree with you on that***. Before -- so all they would get is maybe five-percent of their damages. Now they have a chance to get 100-percent if they make a proper showing that it's representative, and do the work required by our patent local rules.

A1068-69.

The closest MPT came to an explanation for what Dr. Richardson theoretically got wrong was an assertion that Dr. Richardson supposedly had only one week to perform his analysis, an argument MPT repeats on appeal. A1096-97, A1195. LG pointed out, however, that by the time Dr. Richardson put forth his sworn declaration on October 15, 2012, he had been in possession of all the pertinent Qualcomm code for almost two months, and during that time he swore that he had spent "countless hours" reviewing the code. A1118-19. The court listened to hours of argument from both parties, and then took the issues under submission. A1175.

24

Two weeks later, the district court issued a comprehensive opinion granting

LG's motion. A2-24. The opinion detailed the chronology in the First Action of

MPT's failed attempts to provide sufficient infringement contentions, and

specifically noted that in granting-in-part LG's motion to strike the September 4,

2012 contentions, the court "did not address whether MPT could file a new

complaint against LG." A3-7. The opinion also noted that, once MPT thereafter

put forth its sworn declaration that the rest of the products were represented by the

MSM6575 chip, the court allowed MPT to pursue its contention in the Second

Action, but with the caveat that *res judicata* may well apply. A7-9. The opinion

stated that but for MPT's representations about the MSM6575 in the First Action,

the court would have dismissed the non-MSM6575 products permanently for a

failure to prosecute. A15-16. Thus, in the court's opinion, it would be inequitable

to allow MPT to reverse course, and judicial estoppel was appropriate to prevent

MPT from gaining an "unfair advantage":

> Only after losing the first trial, MPT changed its position. MPT now contends that there are material differences between the Qualcomm chips for the purposes of infringement. (Doc. No. 83 at 21-25.) MPT seeks to gain an unfair advantage based on the Court's decision to sever the products into a new action rather than to strike them with prejudice. MPT should not benefit from its failure to provide proper infringement contentions with adequate claim charts in the first action–a failure that is more egregious if MPT's current position that there are material differences between the chips is correct.

25

> The Court, exercising its sound discretion, concludes that judicial estoppel is appropriate. Accordingly, MPT is judicially estopped from arguing that the Qualcomm chips in this action are materially different for purposes of determining infringement from the allegedly representative Qualcomm MSM6575 chip.

A16-17.

The court rejected MPT's argument that LG was estopped, holding that LG had made no categorical statements that the MSM6575 was not representative, and that the court had not relied on LG's statements about the source code functionality in any event. A17-18. Based on the finding of judicial estoppel against MPT, the court held that both claim preclusion and issue preclusion were warranted. A19-23. On the technical issues, the court agreed with LG that Dr. Bystrom had identified no substantial differences in the non-MSM6575 products and/or had made merely conclusory allegations of colorable differences, and that MPT had failed to adequately respond to the court's order requiring MPT to address certain technical issues as part of the summary judgment briefing. A24, A24 n.14. The court then noted, however, that it need not rely on Dr. Bystrom's failures in view of the judicial estoppel's impact. A24. This appeal followed.

## SUMMARY OF THE ARGUMENT

MPT faces an incredibly steep burden to demonstrate that the district court abused its discretion in finding that MPT was judicially estopped from arguing that the MSM6575 was not representative of the other Qualcomm chips, and consequently in avoiding the clear preclusive effect of the First Action resulting

from that estoppel. In view of the complete procedural history (much of which is missing from MPT's brief), it is clear that MPT swore *ad nauseum* for months that the MSM6575 was representative of the other Qualcomm chips (much more than "supposed inconsistenc[ies]" – MPT-Br. at 17 n.6) . MPT offered declarations from Dr. Richardson and its lead counsel explicitly stating this. The district court stated – and MPT acknowledged – that if MPT had not made these representations, the district court would have granted summary judgment in the First Action in favor of LG for the non-MSM6575 products. A1068-69 ("I do agree with you on that. Before – so all they would get is maybe five-percent of their damages."). So it is eminently equitable that the district court thereafter prevented MPT from reversing course in the Second Action, since those representations were the Second Action's very foundation.

The district court was correct to reject MPT's claim that MPT received no benefit, and that LG was not prejudiced, by MPT's 180-degree change in position. MPT filed the First Action in late 2010, and LG sought a Declaratory Judgment of non-infringement. LG waited for infringement contentions that never came, and continually moved to strike MPT's deficient contentions in the hope of ending the litigation in a prompt fashion. To skirt LG's challenge, MPT convinced the district court that it had a good-faith contention that the MSM6575 was representative of the other chips, and that it would be unduly prejudiced if not allowed to make ***that***

27

*contention*, which was the district court's basis for denying LG summary judgment in the First Action for 95% of the accused products. A2037 fn4; A3336. So the litigation against LG on those products continued. Of course LG was prejudiced. And of course MPT would have gained an unfair advantage if not for the district court's finding of estoppel.

Indeed, the irony here is that had LG never moved to strike MPT's September 2012 contentions (*i.e.*, had it said nothing about MPT's deficient contention that the MSM6575 was representative) the parties would have proceeded to trial in November 2012, the jury would have heard the exact same evidence (plus presumably a sentence about the other Qualcomm chips working the same as the MSM6575), and the jury verdict of no infringement would have indisputably included *all* of the Qualcomm products. The equities dictate barring MPT's attempt to benefit from its own failure to satisfy the Patent Local Rules, and the district court was correct in so holding.

The same rationale applies regarding MPT's allegations against MPEG-4 Part 2. MPT's contention that the MSM6575 was representative also applied to MPEG-4 Part 2 functionality. Accordingly, the judicial estoppel holding, and thus claim and issue preclusion, covers those contentions as well, since the claim and "issue" decided in the First Action was whether the MSM6575 (and *any* functionality incorporated therein) infringed. Beyond that, the district court

28

ordered, and MPT agreed, that the First Action's trial would serve as a

representative case. MPT thereafter purposely dropped its MPEG-4 Part 2

allegations in that trial, and now argues that its decision should not be binding in

the Second Action. But that assertion is wholly contrary to the premise of the

representative case that the court ordered and that MPT agreed to. The court was

well within its wide discretion to preclude MPT's amended infringement

contentions in the Second Action as an improper attempt to resurrect contentions

MPT dropped.

## STANDARD OF REVIEW

The parties agree that Ninth Circuit law governs judicial estoppel findings

(MPT-Br. at 17), and under Ninth Circuit law, a district court's application of

judicial estoppel to the facts of a case is reviewed for abuse of discretion.

*Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782 (9th Cir. 2001). When

reviewing for abuse of discretion, a reversal is inappropriate unless there is a

"definite and firm conviction that the court below committed a clear error of

judgment in the conclusion it reached upon a weighing of the relevant factors."

*Smith v. Jackson*, 84 F.3d 1213, 1221 (9th Cir.1996).

The parties also agree that summary judgment is reviewed *de novo*. (MPT-

Br. at 17). That being said, MPT has not challenged the district court's granting of

summary judgment except to the extent it relies on the factual finding of judicial

estoppel.  Stated differently, to the extent the court's judicial estoppel finding is affirmed, MPT has not appealed the propriety of summary judgment based on issue preclusion and claim preclusion (MPT-Br. at 14-15).  Thus, MPT's first raised issue turns on whether the district court abused its discretion.

MPT's second raised issue, the propriety of the district court's order on LG's motion to strike, also turns on abuse of discretion.  "A grant or denial of a motion to strike is not an issue unique to patent law, and we therefore apply the law of the regional circuit in deciding that question.  The Ninth Circuit reviews a district court's decision to deny a motion to strike for abuse of discretion." *Acumed LLC v Stryker Corp.*, 551 F.3d 1323, 1331 (Fed. Cir. 2008) (internal quotations and citations omitted).  Additionally, a district court's determination that claim and/or issue preclusion is available is reviewed *de novo*, and if preclusion is available, the district court's decision to accord preclusion is reviewed for abuse of discretion. *Miller v. County of Santa Cruz*, 39 F.3d 1030, 1032 (9th Cir. 1994).

## ARGUMENT

### I.    The District Court Was Well Within Its Discretion To Prevent MPT From Reversing The Prior Representations That The MSM6575 Is Representative Of The Other Qualcomm Chips

Judicial estoppel exists to protect the integrity of the judicial process, and that is exactly what the district court did here.  "[J]udicial estoppel is an equitable doctrine invoked by a court at its discretion." *New Hampshire v. Maine*, 532 U.S.

30

742, 750 (2001) (internal quotation marks omitted). "[I]ts purpose is to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment." *Id*. at 749–50 (citation and internal quotation marks omitted). Although judicial estoppel is "probably not reducible to any general formulation of principle, ... several factors typically inform the decision whether to apply the doctrine in a particular case." *Id*. at 750 (citations and internal quotation marks omitted). "First, a party's later position must be 'clearly inconsistent' with its earlier position." *Id*. "Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled." *Id*. (internal quotation marks omitted). "A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Id*. at 751. These factors are not "inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel. Additional considerations may inform the doctrine's application in specific factual contexts." *Id*. All three estoppel factors – clear inconsistency, acceptance, and prejudice/unfair advantage – are clearly present here.

31

**A.      There Is No Question That MPT Has Taken Inconsistent Positions Regarding Whether The MSM6575 Is Representative For Purposes Of Infringement**

The fact that MPT admits at most a "*supposed* inconsistency" in its contentions illustrates the filter that MPT has applied for purposes of this appeal. (MPT-Br. at 17 n.6.)  There is nothing "supposed" about it.  For nearly six months, between May and October 2012, MPT vehemently asserted that the MSM6575 was representative *for the purposes of infringement*.  Leading up to the court's order on MPT's reconsideration motion, there were eight separate instances where MPT alleged the Qualcomm-based phones functioned the same *for the purposes of infringement*:

1.      MPT's May 1, 2012 preliminary infringement contentions (A3075-76);

2.      MPT's September 4 final infringement contentions (A3181, A3184);

3.      Dr. Richardson's September 21 expert report (A3230);

4.      September 28 hearing on LG's motion to strike (A3301);

5.      MPT's October 3 motion for reconsideration (A3339);

6.      Mr. Lorig's October 3 declaration (A3326);

7.      Dr. Richardson's October 15 declaration (A2139-41); and

8.      October 18 hearing on MPT's motion for reconsideration (A3453-54).

At each stage, rather than admitting oversight or claiming it did not have enough time to provide an accurate analysis, MPT reaffirmed its contentions. Each time it provided more detail, often after more and more time to examine the code. In the end, MPT unequivocally stated that all Qualcomm chips could be treated the same for the purpose of infringement based on "countless hours" of examining the relevant source code for all products and that all the chips "had a common nucleus of operative facts." A3453, A2139-41.

Yet, after losing the trial and once the Second Action began, MPT pulled the proverbial "bait and switch," turning to a different expert to state the ***exact opposite conclusion*** based on the same underlying evidence. A2261 ("As Dr. Bystrom explains, unlike Group 2, there are ***material differences*** between the source code for the MSM6575 and the source code for the chips in the other chip groups.") (emphasis added); A2264 ("Dr. Richardson's infringement analysis in the first trial focused on the exact structures in which Dr. Bystrom has identified significant differences."). Dr. Bystrom submitted a lengthy declaration outlining what MPT and Dr. Bystrom characterized as "material" and "significant" differences between the MSM6575 and other Qualcomm chips. A2267-97.

It is difficult to imagine two positions being any more inconsistent.

**B. The Court Explicitly Held That It Relied On MPT's Prior Representation That MPT Would Be Prejudiced If Unable To Prove That The MSM6575 Was Representative**

The district court's order explicitly notes that it relied on MPT's contention that the MSM6575 was representative and that MPT would be prejudiced if it was not given a chance to prove representativeness. A15-16. Indeed, the court explained that but for MPT's last-minute allegation that it had performed the necessary analysis to support a good-faith contention of representativeness, the non-MSM6575 products would have been permanently stricken in the First Action. A15-16. The court reiterated that conclusion at the summary judgment hearing, agreeing that had MPT argued in October 2012 that the products were not represented (and that MPT simply had not provided claim charts), the court undoubtedly would have stricken the products permanently. A1068-69.

Yet despite these explicit statements by the district court, MPT nevertheless asserts that "the district court did not rely upon, and instead rejected, any argument that the MSM6575 chip was representative of the other Qualcomm chips *and therefore that all of the products should be tried together in the First Action*." (MPT-Br. at 21) (emphasis in original). MPT's assertion is unsustainable.

To begin with, the district court certainly knows what it relied upon, and why, and, notwithstanding MPT's assertions to the contrary, the court makes all that explicit in its decision. A2-24. In addition, contrary to MPT's suggestion

34

(MPT-Br. at 18), there is certainly no requirement that the district court must grant some motion in MPT's favor in order for judicial estoppel to attach. The governing precedent merely requires that the court accept a party's position such that acceptance of the later inconsistent position would create the perception that either the first or the second court was misled. *New Hampshire*, 532 U.S. at 750; *Hamilton*, 270 F.3d at 782-83. Thus, the fact that MPT's motion for reconsideration seeking to have the other 18 chips included in the First Action was denied is not the pertinent question. No matter the title of the order regarding reconsideration, the court expressly relied on MPT's statements in granting MPT a significant benefit to LG's detriment. A2037 n.4. Before MPT filed its motion for reconsideration, the Court had stricken MPT's assertions of infringement for 18 of the 19 chips and provided MPT no opportunity to litigate those 18 chips later; after the motion for reconsideration, MPT was provided that opportunity. In the process, the Court specifically relied upon and cited MPT's unequivocal argument that it would be prejudiced if it was not allowed to prove its "representative" claim. *Id.*

Finally, MPT incorrectly assumes that in order for estoppel to be found, the court needed to have actually agreed as a technical matter that the MSM6575 was in fact representative of the other 18 chips. Put differently, MPT alleges that because MPT did not convince the court to allow its representative claims at the

35

First Action's trial, the court must have necessarily rejected MPT's contention outright.  In fact, in its Statement of Facts, MPT goes so far as to argue that the district court made a specific finding in the First Action that the non-MSM6575 products functioned differently for purposes of infringement, and did so at LG's behest.  MPT-Br. at 6-7, 8-9.

But the district court made no such finding, and LG made no such request.  MPT's quote at the bottom of page 8 (citing A1009), regarding the code being different, merely reflects what the parties and the court agreed upon in the Fall of 2012, which is that there was a different set of code for the MSM6575 than for the other chips (A1009); thus representativeness could not be *presumed* in the absence of supporting detailed contentions or charts.  LG made no categorical statements that the MSM6575 worked differently for the purposes of infringement – indeed, in the First Action, MPT had not even disclosed what portion of the remaining Qualcomm chips upon which it based its infringement allegations, so LG had no foundation (then) to agree or disagree.  A17-18.

And the district court explicitly noted this point in its reconsideration order in the First Action and in its summary judgment order in the Second Action.  A2036 ("it is improper for MPT to state that these chips work similarly without providing LG with the source code that MPT relies on as the basis for that assumption."); A17 ("LG argued there ***might*** be material differences in the

36

infringement analysis for the different Qualcomm chips, but LG explained that it needed adequate claim charts to know whether the infringement analysis was the same or different.").  The court did not strike MPT's contentions based on a factual finding that the products worked differently for purposes of infringement; instead, the Court struck MPT's contentions because they were inadequately disclosed and failed to satisfy the Court's Local Rules.  A2034, A18 ("The Court has never held—in this action or in the prior action—that the infringement analysis of the MSM6575 is materially different from the infringement analysis for the other Qualcomm chips.").

Thus, MPT's focus is misplaced.  The issue is not whether the district court relied on and/or was convinced of the ultimate *accuracy* as to Dr. Richardson's position.  The issue is whether the court relied on and/or was convinced that MPT had that *contention*, and whether it would be – as MPT argued – unduly prejudicial if MPT were not afforded the opportunity to test *that contention* in the Second Action.  ***And MPT did convince the court*** that it had a valid contention – whether or not that contention was accurate or not.  A15-16.  Because of this, the court allowed MPT to resurrect claims that otherwise would have been permanently barred. *Id*.

So when MPT attempted to reverse its position in the Second Action, the judicial test for acceptance was plainly met, since it led to the clear perception that

the court had been misled by one of the two competing contentions. The district court explicitly noted as much, indicating that it did not matter to the court whether the MSM6575 was in fact representative, but instead that MPT should not benefit from *contending* that fact in order to obtain the ability to file the Second Action and then contending the exact opposite thereafter:

> Only after losing the first trial, MPT changed its position. MPT now contends that there are material differences between the Qualcomm chips for the purposes of infringement. (Doc. No. 83 at 21-25.) MPT seeks to gain an unfair advantage based on the Court's decision to sever the products into a new action rather than to strike them with prejudice. MPT should not benefit from its failure to provide proper infringement contentions with adequate claim charts in the first action–*a failure that is more egregious if MPT's current position that there are material differences between the chips is correct*.

A16-17 (emphasis added).

### C. LG Would Have Been Prejudiced, And MPT Would Have Unfairly Benefited, Had MPT Been Permitted To Reverse Its Position

MPT's argument that it gained no unfair advantage by its course of conduct is demonstrably false. If MPT had either abided by the Patent Local Rules in the First Action, or maintained its representativeness contention in the Second Action, MPT would have been bound by the First Action's jury verdict.

LG sought a declaratory judgment of non-infringement in the First Action. When MPT failed to satisfy the Patent Local Rules, LG filed a successful motion to strike, and then filed a summary judgment motion to obtain judgment of non-

infringement on the non-MSM6575 products. A6-9. The district court indicated that it would have granted that motion, but for MPT's contentions regarding the MSM6575 being representative and the argument that MPT would be unduly prejudiced if not allowed to make that contention. A1068-69, A16-17.[7] Thus, LG was prejudiced by MPT's actions because LG had to expend substantial resources in fending off a second suit against MPT, and MPT benefited because it found itself in a better position by virtue of having violated the Patent Local Rules. To allow MPT to switch positions simply because it did not like the jury's verdict in the First Action would unfairly reward MPT's failure to abide by the Patent Local Rules, and punish LG for seeking to hold MPT responsible for that failure.

MPT argues that it would be unfair for LG to escape its refusal to stipulate to a single trial, but this is a false burden. As the district court correctly found, it was

---

[7]Case law supports permanent dismissal of accused products where local rules are violated and the other party had filed declaratory judgment action. *Kearns v. General Motors Corp.*, 94 F.3d 1553, 1555 (Fed. Cir. 1996) (barring plaintiff from bringing subsequent suit on patents against same alleged infringer where patents were part of a previous lawsuit that was dismissed due to plaintiff's "inadequate compliance with the court's orders and deadlines"); *Monolithic Power Systems, Inc. v. O2 Micro Int'l Ltd.*, 476 F. Supp. 2d 1143, 1156-57 (N.D. Cal. 2007) (finding collateral estoppel against different defendants in second suit after infringement claims in first suit were dismissed after supplemental infringement contentions were disallowed and 41(b) finding was entered); *Kim v. Sara Lee Bakery Group, Inc.*, 412 F.Supp.2d 929, n.8 (N.D. Ill. 2006) ("However, the Sara Lee counterclaim seeking a declaration of non-infringement is general and sweeping, and a potential failure by Dr. Kim to successfully mount a challenge to various Sara Lee products and formulas in the First Action is not a basis to permit a duplicative second suit here.").

unfair for MPT to make a representative claim without giving LG any basis for that representation. A7, A2036. This left LG with no basis to agree or disagree with MPT. That LG had insufficient information from which to stipulate that the products worked the same does not mean that LG was forever precluded from arguing that the products were in fact representative and/or that MPT should be held to its prior representations.

Along the same lines, LG did not "opt[ ] instead for two separate trials." (MPT-Br. at 9.) LG never believed there would, or should, be two separate trials. MPT's citation to an email exchange between the parties (on A2038) mentions nothing about agreeing to a second trial, or that a second trial would be proper; it simply notes that the first trial would cover the MSM6575. Based on what had transpired, and what Court and MPT had stated (*e.g.*, that estoppel would apply "in any event"), LG planned to simply win the first trial and hold MPT to its representations, which – as it turned out – is exactly what happened. A9, A2069, 2086.

### D.    MPT Distorts The Record

The application of judicial estoppel is clear in this case, and to muddy the waters, MPT resorts to cherry-picking select statements to concoct nonexistent legal errors and create factual inconsistencies that simply are not there.

40

### 1. Contrary to MPT's Assertions, the Timing of the District Court's Rulings Is Irrelevant

MPT suggests that it was the court that led MPT into engaging into a "course of action" (MPT-Br. at 16) and that if judicial estoppel was warranted, the district court should have simply granted LG's 59(e) motion in the First Action, and should not have directed MPT to serve its complaint or set a schedule in the Second Action. (MPT-Br. at 21.) Basically, MPT is arguing that it should have been estopped sooner, *before* it reversed positions, and because it wasn't, it was somehow improper for the court to estop MPT later, *after* it reversed positions. The issue is not whether the court should have or could have granted LG's 59(e) motion – and, to be clear, LG believes that would have been justified – but whether the court's judicial estoppel finding in the Second Action was within the court's discretion, and it plainly was. Any and all supposition regarding why the court did not grant other potential relief is irrelevant.

And contrary to MPT's claim, there is no evidence that district court "suddenly chang[ed] its mind" in finding judicial estoppel. (MPT-Br. at 15.) Indeed, on November 9, 2012, the day after MPT filed its complaint in the Second Action, the Court recognized the prospect of judicial estoppel. A2086 ("We can proceed on [the MSM6575]. There's no prejudice because, depending on whatever the finding is -- if there's a finding of no infringement, I doubt that they'd proceed with the rest of it if they - there's judicial estoppel as well concepts."). Moreover,

41

when the court directed MPT to serve its complaint, and set the schedule for the Second Action, LG had not yet filed its summary judgment motion in the Second Action. Thus, final resolution of the Second Action was not yet presented through appropriate pleadings in the Second Action.

MPT also quotes the court (MPT-Br. at 11) attempting to infer that it somehow invited wholly different contentions from MPT. That is not the case, which is clear upon reviewing the complete statement of the court including the portion not cited by MPT:

> "It's somewhat interesting that now sometimes parties' positions shift. And perhaps the parties now wish that they would have said, okay, let's just stipulate that the results in the one trial continued through the rest. But then it does leave the Court either on the 59(e) motion or on a separate motion for collateral estoppel to then make a decision about whether these are the same type of issues that we already did in the first trial or whether they're dramatically different." A1050.

The Court made clear that it was considering LG's 59(e) motion, which was based on holding MPT to its prior representations. And it certainly never invited new contentions that reversed course on the issue of representativeness.

Moreover, no one forced MPT to spend time and effort in the Second Action to formulating contentions diametrically opposed to its contentions from a year earlier (based on the same underlying evidence), and MPT gave no indication to either the court or to LG it was planning to do so before it served Dr. Bystrom's report. LG had offered to stipulate that the Qualcomm chips were all the same, and

42

the court indicated it would accept such a joint stipulation – MPT refused. A1016,

A1038-39. MPT cannot now complain that the court should have rescued MPT

from its own attempt to gain an unfair advantage in the litigation.

### 2. MPT's Allegation That It Was Prejudiced By Insufficient Time To Gauge "Representativeness" In The First Action Is Belied By The Facts

MPT's brief shifts blame to Qualcomm, and attempts to paint MPT as an

innocent bystander that was rewarded with a second opportunity not because of its

representations to the court but instead because of Qualcomm's late production.

(MPT-Br. at 15 (suggesting that Second Action was allowed "to cure the prejudice

to MPT of [Qualcomm's] delinquent production of discovery in the First

Action.")). That is simply wrong.

Contrary to MPT's allegation that the delay in the First Action "was entirely

the fault of third-party Qualcomm and not of MPT" [MPT-Br. at 23], the record

reflects that MPT continually dragged its feet in pursuing Qualcomm discovery,

with the court finding MPT's diligence to be in a "gray area," to the point the court

indicated that it would have been within its discretion to strike all of MPT's

September 2012 contentions. A3254-56, A3287, A3304-05.

Furthermore, contrary to the present-day contention that Qualcomm's

production left MPT and Dr. Richardson a "single-day review" on a "very limited

quantity of information" (MPT-Br. at 6, 17 n.6), nearly two months after

Qualcomm completed its production, Dr. Richardson definitively asserted in a sworn declaration that he had all the source code he needed and had spent "countless hours" reviewing it. A2139-42. If, as MPT now suggests, it did not have sufficient time to analyze the Qualcomm code and assess the representativeness of the MSM6575 prior to its September 4, 2012 infringement contentions, it had a perfect opportunity to explain that to the district court – literally the next day.

On September 5, 2012, the court held a status conference for the express purpose of addressing the case schedule. MPT made no mention of the need for additional time to formulate its contentions. A6. Only after the district court struck MPT's contentions did MPT come back and argue it should have had more time. Even then, the district court saw through the argument, chastised MPT for not raising any issues at the September 5 teleconference, and specifically held that "MPT may not rely on the timing of that deadline for why it should have been allowed to use representative claim charts." A2035.

After the wealth of assertions in the First Action that the MSM6575 was representative of all other Qualcomm chips, MPT oddly asserts in its brief here that it had insufficient time to assess whether the MSM6575 was representative, but simply alleged it anyway. (MPT-Br. at 2.) That is not what it told the district court. Indeed, it submitted two declarations and extensive briefing on the subject.

44

MPT went "all in" on is representative claim in the hopes of resurrecting the stricken chips. A2139-42, A3322-28, A3453-54. In seeking reconsideration, MPT's only basis for prejudice was not being able to make its representative claim, and that is the only prejudice the district court cited, as it specifically held that MPT could not point to any prejudice due to Qualcomm's production or the deadline for providing contentions. A3336, A2037 n.4, A2034-35.

But then when MPT lost at trial in the First Action, MPT refused to stick to its earlier representations. It turned to review the exact same evidence but reach the exact opposite conclusions of the original expert, a tactic the district court correctly labeled as a scheme "to gain an unfair advantage based on the Court's decision to sever the products into a new action rather than to strike them with prejudice." A16.

There is nothing odd, unusual, or improper in the district court holding MPT to its original position and refusing to allow MPT to find itself in a better position by virtue of violating the Patent Local Rules. The district court's finding of judicial estoppel should be affirmed. MPT has not appealed that summary judgment is improper should the district court's judicial estoppel finding be affirmed, so the summary judgment order should also be affirmed.[8, 9]

---

[8] MPT also has not argued that Appeal 2013-1620 should impact the summary judgment ruling in any meaningful way. For both of these arguments, MPT's reply brief would be too late to raise such an argument. *See SmithKline Beecham Corp.*

## II. The Court Was Well Within Its Discretion To Prevent MPT From Resurrecting The MPEG-4 Part 2 Contentions That MPT Deliberately Dropped During The Representative Trial In The First Action

MPT sets up the second issue on appeal as alternatively one of either claim preclusion (MPT-Br. at 26) or issue preclusion (MPT-Br. at 27). No matter the footing upon which MPT rests its challenge, the court's ruling with respect to the MPEG-4 Part 2 functionality in the accused products was well within its discretion.

First, as an initial matter, MPT's infringement assertions in the Second Action directed at the MPEG-4 Part 2 feature were precluded as a matter of discretion by the court as a violation of the court's procedural orders and the Patent Local Rules. A25-29, A30-36. The district court set up a procedure regarding the First Action and the Second Action that essentially bifurcated the issue of "representativeness" (*i.e.*, the issue of whether MPT's assertion that the MSM6575 was representative of the other chips was factually correct) and focused the parties on trying the case regarding the MSM6575 chip. *See supra*, at 17-19; A27-28.

---

*v. Apotex Corp.*, 439 F.3d 1312, 1319 (Fed. Cir. 2006) ("Our law is well established that arguments not raised in the opening brief are waived.").

[9] Summary judgment would also be appropriate in view of MPT's failure to demonstrate any colorable differences between the products. A21-24. MPT's only evidence purporting to show differences was Dr. Bystrom's declaration, which the district court correctly found was based on the wrong legal standard, provided only conclusory opinions, and violated the court's order on subject matter that needed to be addressed. A23-24. *Cross Medical Products, Inc. v. Medtronic Sofamor Danek, Inc.*, 480 F.3d 1335, 1345 (Fed. Cir. 2007) ("[T]his court reviews the district court's judgment with an eye to whether an alternative basis might support that decision.").

MPT, however, made the strategic choice to abandon its representative claim against MPEG-4 Part 2 functionality in the MSM6575, and, accordingly, the Court precluded MPT from resurrecting that theory (in the form of amended infringement contentions) after the fact. A27-29. Implicit in the court's explanation precluding amended contentions was that there was no diligence by MPT (since MPT dropped its original contentions) and that new contentions would be prejudicial to LG. *Id*. As the court repeatedly reminded the parties throughout the First Action, amended contentions would be permitted only when good cause and diligence were demonstrated. A4-5. The Court correctly found that MPT's attempt to "resurrect" infringement theories previously dropped failed this test. A27-29, A34-36. The court has broad discretion in managing its cases and there was no abuse of discretion in doing so here. *S. Cal. Edison Co. v. Lynch*, 307 F.3d 794, 807 (9th Cir. 2002).

Second, putting aside the propriety of the court's discretionary preclusion of MPT's amended infringement contentions on procedural grounds, both claim preclusion and issue preclusion apply in the present situation. In the First Action, the parties tried to a jury whether ***products*** including the MSM6575 chip infringed MPT's patents. The jury found that those ***products*** did not infringe. A3800. The jury verdict was not limited to any particular functionality, but rather included any and all included functionality.

47

Thus, for claim and issue preclusion, MPT's brief focuses on the wrong issue.  The issue is not whether MPEG-4 Part 2 functionality infringes; the issue is whether the MSM6575 infringed, and the answer is no.  Based on the district court's holding that MPT is judicially estopped from arguing that non-MSM6575 chips operate differently for purposes of infringement, issue preclusion (and claim preclusion) necessarily exist for products using non-MSM6575 chips – no matter whether the particular functionality examined is H.264, MPEG-4 Part 2, or something else.  A20-24.  Stated differently, MPT's second issue on appeal is the same as its first, just specific to a particular infringement theory.  Indeed, MPT's and Dr. Richardson's contentions about the MSM6575 being representative of all products explicitly included reference to **both** H.264 and MPEG-4 Part 2 functionality.  A2139-42.  Therefore, if MPT fails on its first issue, it necessarily fails on its second issue for the same reasons.

Third, even if issue preclusion is analyzed as narrowly as MPT wishes (specific to the MSM6575's MPEG-4 Part 2 functionality), issue preclusion still exists.  Local Rule 16.1(f)(2) requires each party to disclose the contentions upon which it "intends to rely at trial."  In the First Action's pre-trial filings, MPT indicated its contention that products containing the MSM6575 chip's MPEG-4 Part 2 functionality infringed.  A3534-37.  Again, the verdict form did not segregate out any functionality, MPEG-4 Part 2 or otherwise.  A3800.  Thus,

48

MPT's claim that MPEG-4 Part 2 was not tried to the jury is plainly false. The court gave MPT an opportunity to litigate its representative chip, the MSM6575, which included representative MPEG-4 Part 2 functionality. A2059, A2067, A2086. MPT had its opportunity but chose for strategic reasons not to present any argument or evidence on the issue to the jury in the First Action, and therefore lost.[10] *See Monolithic*, 476 F. Supp. 2d at 1157 (holding that collateral estoppel applied in follow-on case where plaintiff's claims were dismissed under Rule 41(b) in first action after being precluded from amending contentions for failing to show good cause for amendment: "[O2 Micro] had a fair opportunity to litigate the issue of MPS' infringement of the '615 patent, and it lost.").

Consequently, the court's holding of preclusion as to MPT's MPEG-4 Part 2 claims is justified under the court's case management responsibilities, under claim preclusion, and/or under issue preclusion (no matter how narrow the issue).

---

[10] Furthermore, under the claim splitting doctrine a party cannot unilaterally drop one of its infringement claims mid-trial and then raise that claim in a separate action, particularly where the opposing party has a declaratory judgment claim. *Polymer Industrial Products Co. v. Bridgestone/Firestone, Inc.*, 347 F.3d 935, 938 (Fed. Cir. 2003) ("a party that does not assert its compulsory counterclaim in the first proceeding has waived its right to bring the counterclaim and is forever barred from asserting that claim in future litigation."); *see also Kearns*, 94 F.3d at 1555; *Kim*, 412 F.Supp.2d at 929, n.8; *Single Chip Systems Corp. v. Intermec IP Corp.*, 495 F.Supp.2d 1052, 1059 (S.D.Cal. 2007).

## III.   MPT Was Not "Denied A Review" Of Its Claims

Throughout its brief, spanning both issues presented on appeal, MPT continually asserts that it was "denied a review" of its claims on the merits and that the district court let LG "win by default."  Nothing could be further from the truth.  What MPT got was its "representative case," which is what it originally requested, and what it agreed to at the November 9, 2012 hearing.  A2059, A2067, A2069, A2086.  MPT intimates that it would have had the chance to file a second litigation no matter what, because of (alleged) prejudice from Qualcomm's actions.  But that is expressly contradicted by the record.  A2035 ("MPT may not rely on the timing of that deadline as a reason for why it should have been allowed to use representative claim charts.").  Instead, it was only the court's specific finding of prejudice – based on MPT's unequivocal representations that the MSM6575 was representative and that it would be prejudiced if not permitted to prove its assertion – that gave rise to the Second Action.  MPT most certainly would have been precluded from pursuing its non-MSM6575 altogether because those claims would have been eliminated through summary judgment or Rule 41(b) for a failure to prosecute.  A15-16.

MPT had its chance, on the merits, at the November 2012 trial.  MPT lost.  Then, rather than abiding by its prior representations (that the MSM6575 was representative) and rather than live up to its prior statements to the court (that issue

preclusion would likely apply "in any event" based on whatever transpired in the November 2012 trial), MPT sought to garner an unfair advantage by having a second expert conclude the exact opposite of its first expert, without ever identifying any errors made by the first expert.

MPT has had four chances to provide infringement contentions against LG, it has consistently failed to properly do so. Each time it has responded by blaming others and making excuses for its own failings. MPT should not get a fifth chance. The district court's judgment should be affirmed in all respects.

## CONCLUSION

For at least the foregoing reasons, the district court's judgment should be affirmed in all respects.

Dated:  February 12, 2014              Respectfully submitted,

/s/ Michael J. McKeon
MICHAEL J. MCKEON
FISH & RICHARDSON P.C.
1425 K Street, NW, Suite 1100
Washington, DC 20005
(202) 783-5070

JUSTIN M. BARNES
LARA S. GARNER
FISH & RICHARDSON P.C.
12390 El Camino Real
San Diego, CA 92130
(858) 678-5070

FRANK P. PORCELLI
FISH & RICHARDSON P.C.
One Marina Park Drive
Boston, MA 02210-1878
(617) 542-5070

Counsel for Defendants-Appellees LG
Electronics, Inc., LG Electronics
Mobilecomm U.S.A., Inc., and LG
Electronics U.S.A., Inc.

## CERTIFICATE OF COMPLIANCE

1.    This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 12,568 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii) and Federal Circuit Rule 32(b).

2.    This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Office 2007 in Times New Roman 14pt.

Dated:  February 12, 2014

/s/ Michael J. McKeon
FISH & RICHARDSON P.C.
1425 K Street, NW, Suite 1100
Washington, DC 20005
(202) 783-5070

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify on this 12th day of February, 2014, I electronically filed the

foregoing with the Clerk of the Court of the United States Court of Appeals for the

Federal Circuit by using the CM/ECF system.  I certify that all participants in the

case are registered CM/ECF users and that service will be accomplished by the

CM/ECF system.

/s/ Michael J. McKeon
FISH & RICHARDSON P.C.
1425 K Street, NW, Suite 1100
Washington, DC 20005
(202) 783-5070